**DREXEL BURNHAM LAMBERT, INCORPORATED, Petitioner,**

v.

**Alex VALENZUELA BOCK, as executor of the Estate of Sarah De Valenzuela, Margaret Martinez, Carlos Alfaro, Clyde Huddelston, Wilbur Manter, Charles Ferris, and Robert Lotierzo, Respondents.**

No. 88 Civ. 2815(PNL).

United States District Court, S.D. New York.

Oct. 11, 1988.

Cahill Gordon & Reindel, New York City (John R. Vaughan, Lisa Pearson, Thomas Campbell, Gary A. Paranzino, of counsel), for petitioner.

Marks Murase & White, New York City (P. Jay Wilker, Guy L. Heinemann, of counsel), for respondents.

## OPINION AND ORDER

LEVAL, District Judge.

This is a motion by petitioner Drexel Burnham Lambert, Inc. to remand a removed action to state court. The action consists of a petition, originally instituted by Drexel in New York State Supreme Court and removed by the respondents to federal court, seeking to require arbitrators to sever several arbitration claims which were being jointly conducted by the American Arbitration Association ("AAA"). The claims being arbitrated were instituted by Valenzuela and other customers of Drexel (hereafter the "Customers") alleging that Drexel violated the federal securities laws. The petition was predicated on the Federal Arbitration Act, 9 U.S.C. § 4. On June 28, 1988, the Court heard oral argument on the motion, and the parties thereafter have filed supplemental memoranda.

## BACKGROUND

The procedural history is as follows. In October 1986, the Customers brought an action in this court charging Drexel with violation of the federal securities laws. *de Valenzuela v. Drexel Burnham Lambert, Inc.,* 86 Civ. 7587 (WCC). Drexel promptly moved to stay the action and compel arbitration pursuant to arbitration clauses in the Customers' Agreements. At the time, it was not clear that claims of violation of the federal securities laws were subject to arbitration agreements. *See Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The Supreme Court, however, had granted certiorari in *Shearson/American Express Inc. v. McMahon,* undertaking to consider the question. Judge Conner stayed the action to await the Supreme Court's decision which, when rendered on June 8, 1987, *Shearson/American Express Inc. v. McMahon,* —— U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), upheld the enforceability of arbitration agreements over claims under the Securities Exchange Act of 1934.

In response to the Supreme Court's decision, the Customers instituted arbitration on September 16, 1987 under a joint claim lodged with the AAA. On November 8, 1987, the federal court action was dismissed.

Drexel objected before the arbitrators to hearing the claims of the various Customers jointly. On March 2, 1988, the AAA ruled that it would proceed with the arbitration on a joint basis as filed "in the absence of a court order or agreement of the parties to the contrary."

Drexel then lodged this action in the New York State Court, seeking to compel the arbitrators to sever the claims of the various customers from one another. The Customers removed the action to this Court. Drexel moves for remand, contending that the federal court lacks subject matter jurisdiction to entertain the dispute.

I conclude that the matter was improperly removed and Drexel's motion to remand must be granted.

## DISCUSSION

The Customers argue that the case is removable to federal court on the basis of general federal question jurisdiction. 28 U.S.C. § 1441. They argue that the petition seeks relief under a federal statute, the Federal Arbitration Act. As further evidence of the federal nature of the dispute, they note that the underlying dispute, which is the subject of the arbitration, arises under the Securities Exchange Act of 1934 and was originally waged in federal court.

Drexel argues that § 4 of the Arbitration Act does not provide the relief it seeks. It contends that it pleaded § 4 in error, that § 4 applies only to petitions to compel arbitration, and that its petition for an order governing the manner of conducting the arbitration should have been addressed simply to the equity power of the court to supervise arbitrations. In any event, Drexel argues, the Federal Arbitration Act does not confer federal jurisdiction.

■■■ 1. The fact that the dispute was initially waged in federal court does not, without more, vest this Court with jurisdiction. It is true, had the federal court retained jurisdiction of the Customers' '34 Act complaint, it would have had ancillary

power also to consider an application to compel under § 4 of the Arbitration Act. *See Hunt v. Mobil Oil Corp.*, 557 F.Supp. 368, 371 (S.D.N.Y.1983) (Weinfeld, J.). The federal court action was, however, dismissed. At the time this petition was removed, there was no federal action pending to which it could become ancillary. Thus, if federal jurisdiction exists, it must be premised on this petition itself and not on a prior action no longer before the federal court.

■■ 2. As to Drexel's argument that the suit does not arise under § 4, Drexel reads the statute too narrowly. It provides "for an order directing that such arbitration proceed *in the manner provided for in such [arbitration] agreement."* (Emphasis added.) It thus authorizes not only an order to arbitrate but also an order that the arbitration be conducted in the manner provided for in the agreement. *See Del E. Webb Construction v. Richardson Hospital Auth.*, 823 F.2d 145, 150 (5th Cir.1987) (under § 4, district court limited to enforcing arbitration awards according to their terms); *Weyerhauser Co. v. Western Seas Shipping Co.*, 743 F.2d 635, 637 (9th Cir.) (same), *cert. denied*, 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984).[1]

■■ 3. On the other hand, removal jurisdiction may not be predicated upon the fact that the petition asserts rights under the Federal Arbitration Act. The Supreme Court has noted that the Federal Arbitration Act is "something of an anomaly in the field of federal-court jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). Although the right sought to be enforced is created by federal statute, the Court has held that these rights are not among those

---

1. In light of my disposition, I need not reach the issue whether consolidation of arbitrations is proper in the absence of an agreement for consolidation of arbitrations, or whether *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir.1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976) allowing court ordered consolidation in the absence of an agreement, remains good law. Compare *Sociedad Anonima v. CIA. de Petroleos de Chile, S.A.*, 634 F.Supp. 805 (S.D.N.Y.1986)

(*Nereus* still good law) *with Ore & Chemical Corp. v. Stinnes Interoil, Inc.*, 606 F.Supp. 1510 (S.D.N.Y.1985) (court's authority to consolidate limited by the terms of the arbitration agreement). It is sufficient for jurisdictional purposes that the claim to sever is not "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *see Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974).

giving rise to federal question jurisdiction. *See Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 (1984); *see also Krauss Bros. Lumber Co. v. Louis Boussert & Sons Inc.*, 62 F.2d 1004 (2d Cir.1933). A party seeking to enforce rights created by the Arbitration Act must do so in the state courts unless federal jurisdiction can be independently established. *See Commercial Metals Co. v. Balfour, Guthrie, & Co., Ltd.*, 577 F.2d 264, 268–69 (5th Cir.1978); *Metro Industrial Painting Corp. v. Terminal Constr. Co.*, 287 F.2d 382, 384 (2d Cir.), *cert. denied*, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); *Hughes–Bechtol, Inc. v. West Virginia Board of Regents*, 527 F.Supp. 1366, 1378 (S.D.Ohio 1981), *aff'd*, 737 F.2d 540 (6th Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984). Thus, a petition under § 4 to require arbitration of a dispute arising under a commercial contract must be brought in state court unless, for example, diverse citizenship or a maritime contract is present to justify federal jurisdiction. *See* C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3569, at 172 n. 12 (1984) ("The usual rules for determining federal question jurisdiction ... apply [to actions under the Federal Arbitration Act]").

■ 4. The Customers then argue that federal jurisdiction obtains where § 4 is invoked to compel arbitration of a dispute over a federally created right. As the underlying dispute here involves rights asserted under the Securities Exchange Act of 1934 and could be brought by the Customers as an action in the federal court under the federal question jurisdiction, 28 U.S.C. § 1331, the Customers contend that a petition to compel arbitration under § 4 may be brought in, or removed to, federal court.

They contend this position is supported by the provision of § 4 that "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for such agreement, would have jur-*isdiction under Title 28, in a civil action or in admiralty *of the subject matter of a suit arising out of the controversy between the parties*, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4 (emphasis added). They argue that this provision gives the Court jurisdiction in all disputes of which it would have had jurisdiction "save for" the arbitration agreement; the federal court would have jurisdiction of their '34 Act complaint save for the arbitration agreement; and accordingly it has jurisdiction of the § 4 petition.

The problem is, in part, one of bad statutory drafting. In addition to section 4, there are numerous provisions of the Act that refer to the "the United States court," 9 U.S.C. §§ 7, 9, 10, 11, in a manner that reads like a bestowing of jurisdiction. These references have not been so construed. They have not been understood to confer jurisdiction on the federal court. For example, § 7, dealing with the problem of compelling attendance of witnesses at arbitration, provides for a petition to "the United States district court ... [to] compel the attendance of such person or persons before said arbitrator or arbitrators." 9 U.S.C. § 7. Section 9, regarding the confirmation of arbitration awards, states that, if the parties in their agreement have not specified the court to which an application to confirm the arbitration award may be made, "then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. Section 10 provides that the same "United States court" may make an order vacating the award, while section 11 permits the same "United States court" to modify or correct the award. Each of these sections seems on its face to confer jurisdiction on the United States courts. A literal reading would mean that for any arbitration to which the Act applies, petitions to compel, confirm, vacate, modify and to compel the attendance of witnesses could all be brought as original proceedings in the federal courts. In spite of the apparent meaning of these sections, courts have consistently held that they do not confer federal subject matter jurisdic-

tion. *See C.P. Robinson Construction Co. v. National Corp. for Housing Partnerships*, 375 F.Supp. 446, 448–49 (M.D.N.C. 1974) (section 3); *Instituto Cubano de Estabilizacion del Azucar v. T/V Firbranch*, 130 F.Supp. 170 (S.D.N.Y.1954) (sections 5 and 7); *E.A.S.T., Inc. of Stamford, Conn. v. M/V Alaia*, 673 F.Supp. 796 (E.D.La. 1987); *Metropolitan World Tanker Corp. v. P.N. Pertambangan Minjakdangas Bumi Nasional*, 427 F.Supp. 2, 3–4 (S.D.N.Y.1975) (section 8); *Ballantine Books, Inc. v. Capital Distributing Co.*, 302 F.2d 17 (2d Cir.1962) (section 9); *Paley Associates, Inc. v. Universal Woolens, Inc.*, 446 F.Supp. 212 (S.D.N.Y.1978) (section 10).

Had these seeming grants of jurisdiction been construed to perform that role, they would have represented a potentially drastic change in the scope of federal court activity. Every dispute arising from an employment contract or a commercial contract "involving commerce" containing an arbitration clause could give rise to a federal court action for the confirmation, vacation or modification of an arbitration award. It would be surprising if Congress had intended so drastic a change of federal jurisdiction.

The federal statute was modelled on the New York State arbitration act. *See Southland Corp. v. Keating*, 465 U.S. 1, 25 n. 8, 104 S.Ct. 852, 866 n. 8, 79 L.Ed.2d 1 (1985) (O'Connor, J., dissenting). That statute provided for petitions brought in the "supreme court" (of New York). It would appear that the draftsman of the federal statute, recognizing the need to alter those references to the "supreme court," substituted references to the United States district court on the theory that a reference to the federal court in a federal statute is analagous to a reference to the state court in a statute of a state. *See* Sales and Contracts to Sell in Interstate and Foreign Commerce, and Federal Commercial Arbitration, Hearing on S. 4213 and S. 4214 before a Subcommittee of the Senate Committee on the Judiciary, 67th Cong., 4th Sess. 2 (1923) (statement of Mr. Charles C. Bernheimer) ("This bill follows the lines of the New York arbitration law, applying it to the fields wherein there is Federal juris-

diction."). That semblance of logic overlooked the fact that while the New York State legislature was prescribing for a unitary state court system, the federal statute was imposing law on the states and state courts as well as on the federal court system. *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Accordingly, courts have not construed these references to the United States district court as intending to confer federal court jurisdiction, but rather as specifying the powers possessed by the court in a case that is properly before it. The question then arises whether the reference to the federal court in § 4 should be read literally, or in a manner consistent with the references to the federal courts in other sections of the Act.

Several reasons argue against the reading urged by the Customers. First, and most important, it is contrary to the holdings of the Supreme Court. In *Moses H. Cone* and in *Southland, supra*, the Supreme Court stated that the Federal Arbitration Act neither confers federal court jurisdiction nor establishes the kind of federal right that entails federal jurisdiction under 28 U.S.C. § 1331. *Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983); *see Metro Industrial Painting Corp. v. Terminal Constr. Co.*, 287 F.2d 382, 284 (2d Cir.1961); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 408 (2d Cir.1959), *cert. dism.*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); *Krauss Bros. Lumber Co. v. Louis Bossert & Sons Inc.*, 62 F.2d 1004 (2d Cir.1933).

Second, it is more likely, considering the Act in totality, that this language, like the other references to the federal courts, was intended otherwise. The words stressed by the Customers, referring to the court "which, save for such agreement, would have jurisdiction," in all likelihood responded to an antiquated and arcane principal of

the common law.[2] At the time the Act was passed, a claim for specific performance of an agreement to arbitrate would not be enforced by the federal courts because such a clause was construed as an agreement to "oust" the court of jurisdiction. *See Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978, 985 (2d Cir. 1942).[3] The Senate Report on the Act explained its purpose as to overturn the "very old law ... that if an action at law were brought on the contract containing the agreement to arbitrate, such agreement could not be pleaded in bar of the action." S.Rep. No. 536, 68th Cong., 1st Sess. 2 (1924). The Act addressed the inequity that was perceived to exist where only one party to an arbitration agreement was a citizen of a state where such agreements were enforceable; the other party to the agreement at his option could either hold the first to arbitration by bringing suit in state court or defeat the agreement, at any time, by commencing suit under diversity jurisdiction in federal court. *See* Arbitration of Interstate Commercial Disputes, Joint Hearings S. 1005 on H.R. 646 and before the Subcommittees of the Committees on the Judiciary, 68th Cong., 1st Sess. 16, 35 (1924) (Statements of Julius Henry Cohen and W.W. Nichols).[4] Thus, it has been held under § 4 that when federal jurisdiction is otherwise present by reason of diversity or admiralty, the fact that the plaintiff is seeking affirmative relief under an agreement to arbitrate does not divest the court of jurisdiction.[5] *See The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 44–45, 64 S.Ct. 863, 864–65, 88 L.Ed. 1117 (1944). The likely intended

2. The original § 4 provided:
   That a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.
   Act of Feb. 12, 1925, c. 213, § 4, 43 Stat. 883.

3. One year before the Arbitration Act was passed, Judge Hough, in holding that the federal court sitting in admiralty could not compel arbitration under an arbitration clause, declared: "Without legislation, and because the trend of modern opinion is toward the literal enforcement of the contracts of men of mature years and presumably sound mind, this court is asked to provide some method of overriding, or explaining away not only its own previous decisions but those of the Supreme Court, which for a generation or so have been regarded as declaring the law to be that any agreement contained in an executory contract, ousting in advance all courts of every whit of jurisdiction to decide contests arising out of that contract, will not be enforced by the courts so ousted." *Atlantic Fruit Co. v. Red Cross Line*, 5 F.2d 218, 220 (2d Cir.1924).

4. In addition, it was hoped that the Act would "set a standard [for similar Acts] throughout the United States." *Id.* at 28 (statement of Alexander Rose). The legislative history thus provides no basis to believe that the reference to the United States district court in § 4 means anything other than that when an action is otherwise properly lodged in federal court, the court

may compel arbitration. *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 418 n. 18, 87 S.Ct. 1801, 1813 n. 18, 18 L.Ed.2d 1270 (1967) (Black, J., dissenting) ("'The purpose of this bill is to make valid and enforceable agreements for arbitration contained in contracts involving interstate commerce ... or which may be the subject of litigation in the federal courts.'") (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924)); Committee on Commerce, Trade and Commercial Law, *The United States Arbitration Law and its Application*, 11 A.B.A. J. 153, 154 (1925) ("The jurisdiction exists in those cases in which, under the Judicial Code, the Federal courts would normally have jurisdiction of the controversy between the parties. The right of a party to libel a vessel or other property at the commencement of the proceeding, in cases otherwise justiciable in admiralty, is preserved so that this important preliminary safeguard is not lost by an agreement to arbitrate.") At the time the Federal Arbitration Act was passed, it was assumed that federal statutory rights were not encompassed by arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 3364, 87 L.Ed.2d 444 (1985) (Stevens, J., dissenting).

5. The cases cited by Bock, *Guiness–Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468 (2d Cir.1980); *Marcy Lee Manufacturing Co. v. Cortley Fabrics Co.*, 354 F.2d 42 (2d Cir.1965); *Burger Chef Systems, Inc. v. Baldwin, Inc.*, 365 F.Supp. 1229 (S.D.N.Y.1973); *Management Recruiters of Albany, Inc. v. Management Recruiters International, Inc.*, 643 F.Supp. 750 (N.D.N.Y.1986), thus do not address the issues presented by this case because they were all removed on the basis of diversity.

meaning of the "save for" clause is that the court which is otherwise vested of jurisdiction of the suit would not be divested by the arbitration agreement and may proceed to order arbitration, contrary to prior precedent.

Third, it is difficult to find a rational relationship between the different sections of the Act referring to the powers of the federal court if the "save for" clause is given the significance that the Customers argue for. If the references to the United States court are understood as jurisdictional, we would find incomprehensible differences between the scope of jurisdiction for different purposes. Section 7 authorizing the "United States court" to compel the attendance of witnesses would apply in every case covered by the act—*i.e.*, every case of a contract "involving commerce." Petitions to compel under § 4, on the other hand, could be brought only in a far narrower category of cases—those in which the federal court had an independent basis of jurisdiction of the underlying dispute. There is no policy reason that could explain this bizarre difference.

If, on the other hand, only § 4 (with its unique "save for" clause) were read as conferring jurisdiction, this would produce an equally incomprehensible distinction. It would be bizarre if a petition to compel arbitration could be brought in federal court while a petition to confirm or vacate the arbitration award in the same underlying dispute could not. The interest of the federal court in determining whether the arbitration award was entered in "manifest disregard" of the federal law, *see, e.g., Office of Supply, Government of Republic of Korea v. New York Navigation Co.*, 469 F.2d 377, 380 (2d Cir.1972), would seem to be far greater than the federal interest in seeing that the claims be arbitrated. In petitions to compel arbitration, the only issue is generally whether the parties have entered into a binding agreement to arbitrate that covers the dispute. The interpretation of the federal right at stake is generally not implicated in the dispute before the court until the time of arguments to confirm or vacate the award. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,

388 U.S. 395, 403–404, 87 S.Ct. 1801, 1805–1806, 18 L.Ed.2d 1270 (1967); *Conticommodity Services, Inc. v. Phillip & Lion*, 613 F.2d 1222, 1225 (2d Cir.1980).

■ Finally, if this Act is construed to provide for a federal forum whenever the underlying dispute involves a federal question, it must be seen as overturning the well-established rule that under § 1331 federal question jurisdiction must be determined based on the face of a "well-pleaded complaint." *See Gully v. First National Bank in Meridian*, 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936); *Four Keys Leasing & Maintenance Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir.1988); *Travelers Indemnity Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986). "Congress has given the lower federal courts jurisdiction to hear, ... by removal from state court [on federal question grounds], only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2855–56, 77 L.Ed.2d 420 (1983).

Under the well-pleaded complaint rule, a suit does not come within the federal question jurisdiction unless a proper statement of the relief sought would necessarily include reference to federally created rights. Because the Supreme Court has found that the right to compel arbitration under this Act is not one of the federally created rights that gives rise to federal question jurisdiction, the necessary reference to the Arbitration Act does not bring the suit into federal court. The nature of the underlying dispute, (here a claim of fraud in violation of § 10 b of the 1934 Exchange Act), is not part of a well-pleaded complaint asking the court to order arbitration, or, as in this case, asking the court to order that the arbitrations be conducted severally, rather than jointly. Questions of the polices of the '34 Exchange Act will not enter the dispute unless as part of the Respondent-

Customers' answer to the petition. *See Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 1805–1806, 18 L.Ed.2d 1270 (1967); *Conticommodity Services, Inc. v. Phillip & Lion*, 613 F.2d 1222 (2d Cir.1980). It is well settled that issues of federal law that are injected into a suit by the answer rather than the complaint do not satisfy the requirements of federal question jurisdiction.[6] *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

It is unlikely that Congress intended to repeal the well-pleaded complaint rule in the Arbitration Act. The primary purpose of the Arbitration Act was to " 'revers[e] the centuries of judicial hostility to arbitration agreements, by plac[ing] arbitration agreements upon the same footing as other contracts.' " *Shearson/American Express, Inc. v. McMahon*, 107 S.Ct. 2332, 2337 (1987) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510, 94 S.Ct. 2449, 2452, 41 L.Ed.2d 270 (1974)). It made available a court procedure—an action to compel and later to confirm or vacate arbitration agreements—that the courts had previously held they had no authority to entertain. By contrast, when Congress intended to expand federal jurisdiction to give the United States district courts authority to hear specified arbitration cases, in the case of arbitrations under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*, it did so expressly. *See* 9 U.S.C. § 203 (giving the federal district courts jurisdiction over an action or proceeding falling under the Convention); 9 U.S.C. § 205 (cases within Convention may be removed from state court despite the well-pleaded complaint rule).[7]

\* \* \*

■ I conclude that § 4's reference to the federal courts means only that a petition under the Arbitration Act may be brought in federal court whenever status factors authorizing the bringing of the underlying dispute in federal court similarly affect the petition. Thus, when a dispute is between citizens of different states and the amount in controversy exceeds $10,000, the petition to compel arbitration will fall within federal jurisdiction[8]; when the arbi-

6. To construe § 4 as the Customers suggest would also entail needless confusion and waste over jurisdiction of a simple petition to compel arbitration. A petition in a local court asking nothing more than an order compelling arbitration may undergo first removal (requiring the parties to travel what may be a great distance to the federal court), followed by a motion for remand and debate over whether the underlying dispute arises under federal or state law, and whether the right to identify its nature belongs to the plaintiff or the defendant. This can hardly be what was intended by a statute whose declared purpose was to simplify the resolution of contractual disputes by making arbitration agreements enforceable.

7. When Congress has intended to create an exception to the well-pleaded complaint rule, it has generally provided so explicitly. *See, e.g., Hampton House Management Corp. v. Saleh*, 357 F.Supp. 591 (S.D.N.Y.1973) (§ 211(a) of the Economic Stabilization Act of 1970); 12 U.S.C. § 632 (transactions involving international or foreign banking). *See generally* 1A J. Moore, *Moore's Federal Practice* ¶ 0.160[3.–2] (1987). In *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), the Supreme Court rejected the argument that another federal statute, the Federal Declaratory Judgment Act, abrogated the well-pleaded complaint rule. It reasoned that a statute passed to create a remedy rather than enlarge jurisdiction did not "impliedly repeal[ed] or modif[y]" the jurisdictional requirements of the general federal question statute. *Id.* at 671–72, 70 S.Ct. at 878–79.

8. This is so even when the action is commenced in state court and the state court petition does not plead $10,000 in controversy. *See Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511 (2d Cir.1957). The Customers' reliance on *Davenport* is misplaced. The authority of a federal court to examine the underlying controversy in determining whether diversity jurisdiction is present derives not from § 4 of the Arbitration Act, as the Customers argue, but rather from the long-established rule that a party may not conceal the basis for federal jurisdiction by artful pleading. *See Corwin Jeep Sales v. American Motor Sales*, 670 F.Supp. 591, 596 (M.D.Pa.1986); *Smith v. Executive Fund Life Insurance Co.*, 651 F.Supp. 269, 270 (M.D.La. 1986); *Craig v. Congress Sportswear, Inc.*, 645 F.Supp. 162, 164 (D.Me.1986); *Hirsch v. Jewish War Veterans of United States*, 537 F.Supp. 242, 243 (E.D.Pa.1982); C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3725, at 423 (1985). There is no contention here that Drexel concealed a basis for federal question jurisdiction in its petition in state court. *See, e.g., Franchise Tax Bd. v. Construction Laborers*

tration clause sued on is part of a maritime contract, the admiralty jurisdiction will apply to the arbitration petition as well as to the underlying suit; and a petition in a labor arbitration proceeding under the Labor Management Relations Act, 29 U.S.C. § 185(a), will likewise be in federal court by virtue of the provisions of § 301. *See Communications Workers of America v. Pacific Tel. & Tel. Co.,* 462 F.Supp. 736 (C.D.Cal.1978); *Celmer v. Luden's, Inc.,* 427 F.Supp. 991 (E.D.Pa.1977); *Minkoff v. Scranton Frocks, Inc.,* 172 F.Supp. 870 (S.D.N.Y.1959); *Ingraham Co. v. Local 260,* 171 F.Supp. 103 (D.Conn.1959). In all such cases, the petition to compel arbitration is in federal court on its own terms by virtue of a federal statute conferring federal jurisdiction on such disputes. The same is not true of a petition where the claim of federal jurisdiction is not based on the petition itself, but rather on the federal character of the underlying dispute.

I conclude that the motion for remand to state court must be granted.

SO ORDERED.

*Vacation Trust,* 463 U.S. 1, 22, 103 S.Ct. 2841, 2852, 77 L.Ed.2d 420 (1983); *Nordlicht v. New York Telephone Co.,* 799 F.2d 859, 862 (2d Cir.

1986), *cert. denied,* 479 U.S. 1055 107 S.Ct. 929, 93 L.Ed.2d 981 (1987).