In the Matter of the Application of PRU-DENTIAL SECURITIES INCORPO-RATED and Prudential–Bache Proper-ties, Inc. (named as Prudential Proper-ties, Inc.), Plaintiffs,

For a Judgment Staying the Arbitration Captioned Ahern v. Prudential Securi-ties Inc., No. 9201635, Brought Before the National Association of Securities Dealers, Inc. by,

Richard Ahern, et al., Defendants.

No. 92 Civ. 4768 (GLG).

United States District Court, S.D. New York.

July 30, 1992.

Skadden, Arps, Slate, Meagher & Flom (Jay B. Kasner, Brian D. Graifman, of counsel), New York City, for plaintiffs.

Kantor, Bernstein & Kantor (Joel H. Bernstein, of counsel), Timothy J. Dennin, P.C. (Timothy J. Dennin, of counsel), New York City, Grady & Associates, L.P.A. (W. Andrew Clayton, Jr., of counsel), Naples, Fla., for defendants.

## OPINION

GOETTEL, District Judge.

Plaintiffs Prudential Securities and Pru-dential–Bache Properties (referred to col-lectively as "Prudential") provide securities brokerage services. During 1982, Pruden-tial sold to its customers, the defendants in this suit, limited partnership interests in Archives New York Limited Partnership ("ANY"), which was established to finance the renovation of a New York City ware-house. Prudential allegedly informed these customers that ANY could secure the total amount for the warehouse project with the assistance of a $40 million bank loan.

However, ANY did not obtain the bank loan, and the value of the partnership interests decreased significantly. The customers contend that Prudential intentionally failed to disclose that ANY had not met determinative conditions precedent to the bank loan commitments, and that ANY's managing general partner had served a prison term for embezzlement in 1967. The customers claim that they were unable to discover the alleged omissions until at least March 4, 1991, when *Business Week* published an article entitled "The Mess at Pru–Bache". As Prudential was a member of the National Association of Securities Dealers Incorporated ("NASD"), which provides arbitration of customer disputes, the customers who had invested in ANY sought arbitration before the NASD in May 1992, claiming that Prudential violated RICO and the federal securities laws by alleged omissions, misrepresentations, and fraud.

On June 1, 1992, Prudential filed a petition to stay arbitration in Supreme Court, Westchester County, arguing that the six year statute of limitations provided by Section 15 of the NASD Code of Arbitration Procedure barred the claims raised by their customers. The customers removed the state action to this court on June 26, 1992, asserting as grounds for removal that:

> the District Court has original jurisdiction of the instant action in accordance with 28 U.S.C. Section 1331, pursuant to the claims asserted under the 'Federal Securities Laws' (including the Federal RICO Act, 18 U.S.C. Sections 1961–1968) and the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.*

Notice of Removal, at 2. The customers also petitioned this court to compel arbitra-

tion.[1] Before us now is Prudential's motion to remand on the grounds that this court lacks subject matter jurisdiction, and for costs and expenses, including attorneys' fees, incurred in contesting the removal.

## I.

■ A defendant may remove to federal court only if the matter properly could have been brought by the plaintiff in federal court. 28 U.S.C. § 1441(a). Where there is no diversity, as here,[2] an action may be removed only if the district court had original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States. 28 U.S.C. § 1331; 28 U.S.C. § 1441(b). In order for a claim to arise under federal law, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action". *Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). In addition, federal question jurisdiction under § 1331 is established when "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2855–2856, 77 L.Ed.2d 420 (1983). It is well settled law that any federal question must be disclosed on the face of the complaint, unaided by the answer. *Phillips Petroleum Co. v. Texaco Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974).[3]

■ Applying these principles to the present case, we see from the face of the petition to stay arbitration that Pruden-

---

**1.** The customers thereafter commenced a separate action in state court on the same set of facts in order to "preserve their rights" in the event that the arbitration is stayed. Complaint, at 2.

**2.** Both parties agree that diversity is absent because some customers are New York residents and Prudential–Bache Properties is a Delaware corporation with principal offices in New York.

**3.** The customers rely on *Villarreal v. Brown Express, Inc.*, 529 F.2d 1219 (5th Cir.1976), for

the proposition that this court must look beyond the complaint to ascertain federal question jurisdiction. In *Villarreal*, the court considered the entire record because the plaintiff had fraudulently evaded removal by drafting a complaint to "artfully disguise" the true purpose of the law suit. Here there is no evidence that in order to avoid removal Prudential artfully disguised the purpose of the suit in the petition to stay the arbitration, thus negating the justification for an inquiry beyond that document.

tial's purported right, i.e. the right to stay arbitration, is created by a private agreement, the NASD contract, not federal law. NASD rules are established and enforced by a private association and do not give rise to federal question jurisdiction. *See Lange v. H. Hentz & Co.*, 418 F.Supp. 1376, 1380 (N.D.Tex.1976) (finding from the historical and structural relationship of the NASD and the Securities Exchange Commission that the breach of NASD rules is simply a breach of a private agreement that does not confer jurisdiction under 28 U.S.C. § 1331). Indeed, at oral argument, the customers conceded as much. In addition, Prudential's right to relief does not necessarily depend on the resolution of any question of federal law because Prudential may succeed in staying the arbitration solely upon an interpretation of the NASD rules concerning statutes of limitations.[4]

 Finally, although the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, establishes and regulates the duty to honor an agreement to arbitrate, the Act does not confer independent federal question jurisdiction under 28 U.S.C. § 1331. *Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 860 n. 9, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 941 n. 32, 74 L.Ed.2d 765 (1983); *In re Harry Hoffman Printing, Inc. v. Graphic Communications International Union, Local 261*, 912 F.2d 608, 611 (2d Cir.1990); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1051 n. 1 (2d Cir.1990); *Metro Industrial Painting Corp. v. Terminal Constr. Co.*, 287 F.2d 382, 384 (2d Cir.1961), *cert.*

*denied*, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); *Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F.Supp. 957, 960 (S.D.N.Y.1988). Before a district court may entertain petitions under the Federal Arbitration Act, there must exist an "independent basis of jurisdiction". *In re Harry Hoffman Printing, Inc.*, 912 F.2d at 611.

The customers argue that this case provides an independent basis of federal court jurisdiction because the original claims asserted in their demand for arbitration arise under the federal RICO statute.[5] They present two arguments in support of this position. First, the customers contend that, although the petition to stay arbitration does not explicitly raise a federal question, the Supreme Court has expressly ruled that § 4 of the Federal Arbitration Act provides for a federal forum whenever the dispute in arbitration involves a federal question. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Second, they argue that this court should take jurisdiction over a dispute concerning the NASD rules because a number of federal judges, including Second Circuit panels, decided issues regarding the rules of the American Stock Exchange ("AMEX"). We find both arguments unpersuasive.

The issue before the Supreme Court in *Moses Cone* concerned a federal court's ability to decline jurisdiction because of parallel state-court litigation. *Moses H. Cone*, 460 U.S. at 5, 103 S.Ct. at 931. The customers find the authority for their assertion that a federal forum is available to consider issues arising out of an arbitration

---

4. Although issues that are injected into a suit by the answer rather than the complaint are not considered in the establishment of federal question jurisdiction, the customers' reliance on NASD policy to refute the tolling of the statute of limitations further supports the notion that this action solely requires interpretation of the NASD rules.

5. The customers argue that Prudential's "complaint" pleads issues of federal law because the petition to stay incorporates the customers' original claims by reference. It is clear, however, that the petition to stay refers to the demand for arbitration, and attaches that document as an

exhibit, merely to identify the action. Such reference does not demonstrate that the RICO laws or the federal securities laws are an essential element in Prudential's claim. *See Albert Einstein Medical Ctr. v. National Benefit Fund for Hosp. and Health Care Employees*, 740 F.Supp. 343, 348 (E.D.Pa.1989) (finding that mere reference to ERISA in an exhibit to the complaint does not make ERISA an 'essential element' of plaintiffs' claim). As Prudential notes, the customers' interpretation would force state court petitioners to either omit any reference to the original dispute or risk conferring federal jurisdiction by referring to such claims.

involving federal claims in the following statement made in a footnote:

> Section 4 [of the Arbitration Act] provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue. *E.g., Commercial Metals Co. v. Balfour, Guthrie & Co.,* 577 F.2d 264, 268–269 ([5th Cir.] 1978) and cases cited.

*Moses H. Cone,* 460 U.S. at 25 n. 32, 103 S.Ct. at 941 n. 32. They argue that the "plain language" in this footnote must be followed. *See Morford v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* No. 91–162–CIV.FTM 15 D (M.D.Fla. Dec. 6, 1991) (holding that removal of proceedings governed by the Federal Arbitration Act was proper where "the federal court would have jurisdiction over the underlying suit").

However, we do not find that the language in *Moses Cone* unequivocally requires federal courts to take subject matter jurisdiction based upon the federal nature of the underlying dispute in arbitration. Indeed, we find that language capable of two interpretations: one, as asserted by the customers, and the other indicating that there must be an ongoing suit based on federal question jurisdiction before an order compelling arbitration can issue. Thus, for clarification, we must turn to the case cited by the Supreme Court in that footnote. A careful analysis reveals that the Court's statement did not open the door to a federal forum for disputes such as the one here. In *Commercial Metals Co. v. Balfour, Guthrie & Co.,* 577 F.2d 264 (5th Cir.1978), the plaintiff brought a petition to compel arbitration over an alleged contract dispute. Since diversity jurisdiction was missing, the plaintiff sought a declaratory judgment that the arbitration provisions of

the contract were valid under § 2 of the Federal Arbitration Act. The *Commercial Metals* court applied the principles enunciated in *Gully* in order to determine whether the plaintiff's right arose under the laws of the United States. Finding that the "right to compel arbitration" derived from the private agreement of the parties, not from any federal law, the *Commercial Metals* court held that federal question jurisdiction was absent. *Id.* at 268. Admittedly, unlike the present case, the dispute to be arbitrated in *Commercial Metals* did not involve federal law. However, the court there did not rely on the nature of the contract dispute to reject jurisdiction, but instead, following *Gully,* examined the source of the plaintiff's "right" as asserted in the complaint. *Id.* Following this analysis, a similar result would be reached here because Prudential's alleged right to stay arbitration derives from a private contract, the NASD contract, not from federal law.

Furthermore, we are persuaded by Judge Leval's opinion in *Drexel Burnham Lambert, Inc. v. Valenzuela Bock,* 696 F.Supp. 957 (S.D.N.Y.1988), which finds that the text of § 4 does not confer federal question jurisdiction based upon the federal character of the underlying arbitration claims.[6] *Accord Klein v. Drexel Burnham Lambert, Inc.* 737 F.Supp. 319 (E.D.Pa.1990). In *Valenzuela Bock,* respondents in an arbitration commenced an action in state court seeking to compel the arbitrators to sever the claims before them. The claimants then removed the action, asserting that federal jurisdiction was provided by the Federal Arbitration Act and the subject of the arbitration, which arose under the Securities Exchange Act of 1934. 696 F.Supp. at 959. Relying upon the language in § 4, which states in relevant part that "[a] party ... may petition any United States district court which, save for such

---

**6.** Section 4 of the Federal Arbitration Act provides in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdic-

tion under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement....

9 U.S.C. § 4.

agreement, would have jurisdiction under Title 28", 9 U.S.C. § 4, the plaintiffs argued that the federal court would have jurisdiction of their '34 Act complaint "save for" the arbitration agreement; and accordingly, it had jurisdiction over the § 4 petition.[7] Judge Leval rejected the claimants' interpretation, finding that the language of § 4 is not intended to confer jurisdiction, but may be read as a response to the arcane principle of common law that an agreement to arbitrate would oust the federal court of jurisdiction. *Id.* at 963. Thus, § 4 may be interpreted as providing that "a court which is otherwise vested of jurisdiction of the suit would not be divested [of jurisdiction] by the arbitration agreement and may proceed to order arbitration, contrary to prior precedent." *Id.*

The court further noted that if the Federal Arbitration Act is construed to provide for a federal forum whenever the underlying dispute involves a federal question, it must be seen as overturning the well-established rule that § 1331 federal question jurisdiction must be determined on the face of a "well-pleaded" complaint. *Id.* Judge Leval observed that when Congress intended to expand federal jurisdiction over arbitration cases or to provide exceptions to the well-pleaded complaint rule, it did so explicitly. He ultimately concluded that "[i]t is unlikely that Congress intended to repeal the well-pleaded complaint rule in the Arbitration Act. The primary purpose of the Arbitration Act was to 'revers[e] the centu-

ries of judicial hostility to arbitration agreements, by plac[ing] arbitration agreements upon the same footing as other contracts.'" *Id.* at 964. The court therefore rejected the notion that it possessed original jurisdiction and granted the remand, stating that "[t]he nature of the underlying dispute, is not part of a well-pleaded complaint asking the court to order arbitration." *Id.* at 963.

Despite such strongly persuasive reasoning from this court, the customers argue that this court should ignore this precedent and deny the motion to remand because Second Circuit courts have heard cases involving stock exchange rules for arbitration. *See PaineWebber Inc. v. Rutherford*, 903 F.2d 106 (2d Cir.1990); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109 (2d Cir.1990). However, none of those cases discuss the issue of whether a dispute in arbitration bestows federal question jurisdiction. Indeed, the facts indicate that diversity of citizenship probably provided an independent basis for jurisdiction in both *Georgiadis* and *Rutherford*. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 724 F.Supp. 120, 121 (S.D.N.Y. 1989); *PaineWebber, Inc. v. Pitchford*, 721 F.Supp. 542, 543, 545–46 (S.D.N.Y.1989).[8]

To conclude, as Prudential's right to stay arbitration under the NASD contract and the Federal Arbitration Act is not one of the federally created rights that gives rise

---

7. The plaintiffs in *Valenzuela Bock* also argued that jurisdiction was conferred because the Federal Arbitration Act provides for a party to petition the "United States district court". Judge Leval responded that other sections of the Act, including 7, 9, 10 and 11, refer to petitions in the "United States court" and none of these sections have been read as conferring jurisdiction. If the unique phraseology of the various sections was interpreted as conferring jurisdiction, it would create incomprehensible differences in the scope of jurisdiction under the Act. *See id.* 696 F.Supp. at 963 ("It would be bizarre if a petition to compel arbitration could be brought in federal court while a petition to confirm or vacate the arbitration award in the same underlying dispute could not.") *See also Klein v. Drexel Burnham*, 737 F.Supp. at 323.

8. We likewise question the relevance of *Shearson Lehman Brothers, Inc., et al. v. Brady*, 783

F.Supp. 1490, (D.Mass.1991), in which the court rendered a decision when the underlying dispute in arbitration concerned a claim for securities fraud but the actual suit before the court required only an interpretation of contract and the American Stock Exchange Rules. Although the opinion reports that the plaintiffs filed the action "on August 21, 1991, alleging jurisdiction pursuant to 28 U.S.C. § 1331", *id.* at 1492, Prudential has provided the complaint, dated August 21, 1991, which states that diversity of citizenship was the basis for jurisdiction. In addition, examination of the full opinion indicates that Judge Keeton cited various state and federal cases that have decided the "AMEX window question" not to justify subject matter jurisdiction pursuant to § 1331 but to demonstrate that courts in general, as opposed to arbitrators, may decide certain issues regarding arbitrability of disputes. *Id.* at 1492–93.

to federal question jurisdiction, and Prudential's right to relief does not necessarily depend upon resolution of the RICO claims asserted by the customers in arbitration, we find that this court does not possess original jurisdiction. Accordingly, we remand the suit to state court.

## II.

█ Pursuant to 28 U.S.C. § 1447(c), federal courts may award costs and expenses, including attorneys' fees, when the removing party has acted in "bad faith" or removal is predicated upon a diversity of citizenship that clearly does not exist. *See In re estate of Duane,* 765 F.Supp. 1200, 1201–02 (S.D.N.Y.1991); *Syms, Inc. v. IBI Security Services, Inc.,* 586 F.Supp. 53 (S.D.N.Y.1984); *Zimmerman v. Conrail,* 550 F.Supp. 84 (S.D.N.Y.1982). We find no evidence of bad faith here, and therefore deny Prudential's motion for costs and expenses.

For the foregoing reasons, plaintiff's motion to remand is granted and the request for costs is denied.

SO ORDERED.