**Elaine E. GIANGRANDE, Plaintiff,**

v.

**SHEARSON LEHMAN/E.F. HUTTON, Defendant.**

**Civ. A. No. 89–2858–T.**

United States District Court, D. Massachusetts.

Sept. 15, 1992.

---

David C. Boch, Bingham, Dana & Gould, Boston, Mass., for defendant.

## ORDER

TAURO, Chief Judge.

Magistrate Judge Cohen's Report and Recommendation is hereby accepted and adopted by this court. Plaintiff's complaint, therefore, is dismissed.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

### August 13, 1992

LAWRENCE P. COHEN, United States Magistrate Judge.

Defendant's motion to dismiss (# 10) was referred to this court for report and recommendation. For the reasons which follow, this court recommends that that motion [1] be allowed for want of subject matter jurisdiction.

### A. *Procedural History*

This is an action to vacate an arbitration award.[2] *See* 9 U.S.C. § 10. In her original pro se complaint (# 01), plaintiff alleged that—because of alleged claims of unsuitable trading—she submitted the matter to arbitration by a three judge arbitration panel. Before that three judge arbitration panel, plaintiff sought *"only* the amount of the principal investment lost ($24,000)." (Emphasis in original by plaintiff). Complaint, ¶ 2. She contended that she was entitled to have the decision of the arbitration panel vacated for a host of reasons. Complaint, ¶¶ 3–5.[3]

Defendant moved to dismiss for want of subject matter jurisdiction—to wit: that the amount in controversy was less than

Paul H. Merry, Garrity & Levin, Boston, Mass., for plaintiff.

Elaine Giangrande, pro se.

1. The motion to dismiss was filed *vis a vis* the original complaint. After that motion was filed, plaintiff filed a motion to amend. Insofar as that motion to amend relates to the original defendant, Shearson Lehman/E.F. Hutton, this court, by order entered contemporaneously herewith, has allowed that motion. Therefore, defendant's motion to dismiss has been addressed as it relates to the amended complaint.

2. More appropriately, to vacate the decision of an arbitrator that no award be made to plaintiff. Plaintiff believes that she was entitled to an award, and moves to vacate the decision of the arbiter to the contrary.

3. She does *not* contend that she had not agreed to arbitrate the claims in issue.

the required jurisdictional amount of $50,000—and for failure to state a claim upon which relief may be granted.

Upon receipt of the motion to dismiss, plaintiff moved to amend the complaint. That motion, as indicated above, footnote 1, has been allowed by this court. In her amended complaint, plaintiff alleges—no doubt in an effort to show the jurisdictional amount required—that she had been injured by the conduct of the defendant to the tune of something in excess of $50,000.[4] The only relief she seeks, however, in the amended complaint is the same relief as sought before, to wit: vacation of the arbitration award.[5]

### B. Subject Matter Jurisdiction—Generally

■ Section 10 of the Federal Arbitration Act, 9 U.S.C. Sec. 1 *et seq.* ("FAA") does not establish an independent basis for federal jurisdiction. As explained in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (4th Cir.1983), the FAA

> does not create any independent federal-question jurisdiction ... hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before an order can issue.

*See also Harry Hoffman Printing, Inc. v. Graphic Comm., Int'l Union, Local 261*, 912 F.2d 608, 611 (2d Cir.1990) ("Section 10 of the Arbitration Act does not confer subject matter jurisdiction on a district court").

---

**4.** This court assumes, for purposes of defendant's motion to dismiss, that if this was an original action between plaintiff and defendant under the securities law, and not one to vacate an arbitration award, plaintiff could establish damages in excess of $50,000.

**5.** That is to say, this is *not* an action under the federal securities laws. *E.g.,* 15 U.S.C. § 78aa and/or Rule 10b(5).

**6.** The jurisdictional amount required to establish federal subject matter jurisdiction was raised from $10,000 to $50,000 on November 19, 1988. Judicial Improvements Act, Pub.L. 100–702 Sec. 201(a), 102 Stat. 4642 (1988). That act became effective 180 days thereafter—*i.e.,* on

In this case, therefore, subject matter jurisdiction exists—if at all—on the basis of diversity, 28 U.S.C. § 1332, or on the basis of an *independent* basis for federal jurisdiction.

### C. Diversity Jurisdiction—Amount in Controversy

To invoke the diversity jurisdiction of this court under Section 1332, plaintiff must make some sort of showing that the amount in controversy is $50,000 or more.[6]

■ In attempting to establish the jurisdictional amount, a plaintiff is entitled to "rely upon the actual or threatened injury ... in establishing the jurisdictional amount," *Local Division No. 714, Amalgamated Transit Union v. Greater Portland Transit Dist.,* 589 F.2d 1, 9 (1st Cir. 1978), citing *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 346, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977). If, however, it appears "to a legal certainty", assuming all that is alleged by plaintiff is true, that the plaintiff cannot recover $50,000 or more, then dismissal is required. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).[7]

■ Insofar as this court can determine, no court has applied the *St. Paul* test to an action to *vacate* a *negative*[8] award under Section 10 of the FAA.

It has been universally held, however, that in an action to *compel* arbitration under Section 4 of the Act, the amount in controversy involved is the greatest

---

May 18, 1989. Plaintiff's first complaint was filed on December 7, 1989, some seven months after that effective date.

**7.** There the Court observed (*Id.*)—

> the rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

**8.** *Negative* in the sense that the moving party seeks to vacate an arbitration decision which awarded the moving party nothing.

amount that the moving party might recover in the sought for arbitration hearing. *See e.g., Davenport v. Proctor & Gamble Manufacturing Co.,* 241 F.2d 511, 514 (2d Cir.1957);[9] *Marcy Lee Manufacturing Company v. Cortley Fabrics Co., Inc.,* 354 F.2d 43, 43 (2d Cir.1965).[10] So too with an action to *enforce* an arbitration award under Section 9 of the Act. *Quick & Reilly, Inc. v. Saglio,* 717 F.Supp. 822 (S.D.Fla. 1989).[11] And that same rationale has been applied in a proceeding to *vacate* an arbitration award. In *Hough v. Merrill Lynch, Pierce, Fenner & Smith,* 757 F.Supp. 283 (S.D.N.Y.1991), plaintiffs filed a Statement of Claim against the defendant brokerage firm with the National Association of Securities Dealers, seeking damages totalling some $3 million, more or less. That statement of claim was referred to an arbitration panel. After arbitration, an award was made in favor of plaintiffs in the amount of $17,500—far less than the $3 million sought. Plaintiffs then brought an action in the United States District Court for the Southern District of New York, alleging, among other things, that the arbitrators were partial, that the arbitrators abused their authority, and that the arbitrators denied plaintiffs due process of law. Because of this, plaintiffs sought an order from the federal court modifying or vacating the arbitrators' award, and remanding the matter to the arbitrators for rehearing.

Defendant moved to dismiss for want of subject matter jurisdiction—*i.e.,* for want of an appropriate amount in controversy[12] supporting diversity jurisdiction[13]—and for failure to state a claim upon which relief may be granted.

In denying the motion to dismiss grounded on subject matter jurisdiction, the court observed, *inter alia* (*Id.* at 285–86)—

Defendants allege that the complaint fails to meet the requirements of diversity jurisdiction because it fails to meet the amount in controversy requirement of 28 U.S.C. @ 1332. In determining whether the amount in controversy requirement has been met, courts apply the "legal certainty" test which requires dismissal of an action when it appears to a legal certainty that the plaintiff's claim is for less than the jurisdictional minimum. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In applying the legal certainty test, resort to matters outside the pleadings may be used to amplify the meaning of the complaint's allegations. *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982), citing *Givens v. W.T. Grant Co.,* 457 F.2d 612 (2d Cir.), *vacated,* 409 U.S. 56, 93 S.Ct. 451, 34 L.Ed.2d 266, *on remand,* 472 F.2d 1039 (2d Cir.1972).

Plaintiffs' seventh cause of action (Complaint paras. 63–68) requests that this Court, in the event that it refuses to modify the award, "refuse to affirm the award, and remit/remand the award to the MSRB with an order that the MSRB retry the case before new arbitrators." As this motion is, in part, *a motion to vacate the arbitration award* and to remand for rehearing, the Court will look to the possible award that might result from the desired *rehearing.* In actions seeking declaratory or injunctive relief, the amount in controversy is measured

9. "In considering the jurisdictional amount requirement the court should look through *to* the possible award resulting from the desired arbitration, since the petition to compel arbitration is only the initial step in a litigation which seeks as its goal a judgment affirming the award." (Emphasis added).

10. "The test here, however, is not what Marcy Lee might collect in an *action* but what it might obtain from the *arbitration* it seeks to compel." (Emphasis added).

11. In *Quick & Reilly,* an arbitration panel awarded plaintiff $44,181.34 for failure of the

defendant to pay his indebtedness on a margin account. Quick & Reilly filed suit in the United States District Court for the Southern District of Florida. That court, in turn, dismissed for want of subject matter jurisdiction, inasmuch as the $44,181.34 was less than the $50,000 required at the time suit was filed.

12. The citizenship of the parties was concededly diverse.

13. Defendant contended that the amount in controversy was simply the $17,500 awarded to plaintiffs by the arbitration panel.

by the pecuniary value of the rights being litigated. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977). The relief sought on the present motion may be measured similarly.

In this action to vacate the arbitration award the amount in controversy may be regarded as either the value to plaintiff of the relief sought or the loss to defendant if the relief is granted. Plaintiffs contend that the amount in controversy in this action is the full amount of the original claim which was resolved by the arbitration award.

In their Statement of Claim before the MSRB plaintiffs requested a total judgment of at least $ 3 million for violations of the Sherman Act and of the Clayton Act.[14] (Emphasis added).

In this court's view, the *Hough* rationale applies equally here, and precludes subject matter jurisdiction. In her claim before the arbitration panel, plaintiff sought damages in the amount of $24,000—and nothing more. In her original complaint—as well as in her amended complaint—plaintiff's challenge is limited solely to the amount of the award [15] made by the arbitration panel. In the words of *Hough, supra*, "the amount in controversy may be regarded as either the value to plaintiff of the relief sought or the loss to defendant if the relief is granted." Computed either way, the amount remains the same—$24,000. Under plaintiff's best case, if this court were to grant the relief requested, *and* plaintiff, after rehearing before arbitration panel, obtained all that she sought,

that would still amount only to $24,000, far less than the $50,000 required by the provisions of 28 U.S.C. § 1332.

This court accordingly does not have subject matter jurisdiction under the diversity statute (28 U.S.C. § 1332).

### D. *Independent Basis for Federal Jurisdiction*

■ Although not argued by plaintiff, given the fact that the subject matter before the arbitration panel could be liberally viewed as one involving "unsuitability" [16]— and, hence, in another context, one which might be alleged as sounding as a Rule 10b–5 claim, this court, *sua sponte*, directed defendant to address the matter of subject matter jurisdiction based on the presence of a federal question. *See* 28 U.S.C. § 1331. Defendant has, consistent with a Procedural Order entered by this court, addressed the issue, and contends that Section 1331 does not provide the "independent basis for federal jurisdiction" within the meaning of *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., supra.* In the circumstances, this court concludes that, even assuming that plaintiff might have brought these claims directly in federal court as Rule 10b–5 claims, invoking federal question jurisdiction,[17] that fact does not support subject matter jurisdiction of this claim which seeks but one remedy— *i.e.*, vacation of the arbitration award.

■ The relationship of disputes *vis a vis* arbitration under the Federal Arbitration Act to general federal question jurisdiction under 28 U.S.C. § 1331 was first discussed in *Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F.Supp. 957

---

**14.** Since plaintiffs in that case initially sought some $3 million before the arbitration panel, the district judge concluded that the amount in controversy satisfied the jurisdictional requirement.

 The district court, however, also concluded that plaintiffs had failed to state a claim upon which relief may be granted—*i.e.*, that plaintiffs had failed to establish grounds for modification or vacation of the arbiters' award.

**15.** In this case, nothing.

**16.** Plaintiff's grievance before the arbitration panel was based on her losses in the market

after the October 1987 market crash. She essentially claimed that she should have been advised by her broker of the use of "stop loss" orders to protect against undue losses in her margin account.

**17.** Of course, even if plaintiff had timely filed a complaint in this court with causes of action sounding in Rule 10b–5, defendant would still be remitted, on motion of the defendant, to arbitration by reason of her agreement to arbitrate all claims—an agreement which she has not challenged, and does not challenge here.

(S.D.N.Y.1988). In that case, a number of investors sought arbitration of Rule 10b–5 and related claims before the American Arbitration Association ("AAA"). When the AAA initially indicated that it would conduct a consolidated proceeding, Drexel Burnham Lambert, Inc. filed suit in the state court seeking severance of the consolidated proceedings. The investors then, in turn, sought to remove the matter to the United States District Court for the Southern District of New York. That court, in turn, ordered the matter remanded to the state court for want of subject matter jurisdiction.[18] In reaching that conclusion, the court observed, *inter alia* (*Id.* at 959–64)[19].

The Supreme Court has noted that the Federal Arbitration Act is "something of an anomaly in the field of federal-court jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). Although the right sought to be enforced is created by federal statute, the Court has held that these rights are not among those giving rise to federal question jurisdiction. *See Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 (1984); *see also Krauss Bros. Lumber Co. v. Louis Bossert & Sons Inc.*, 62 F.2d 1004 (2d Cir.1933). A party seeking to enforce rights created by the Arbitration Act must do so in the state courts unless federal jurisdiction can be independently established. *See Commercial Metals Co. v. Balfour, Guthrie, & Co., Ltd.*, 577 F.2d 264, 268–69 (5th Cir.1978); *Metro Industrial Painting Corp. v. Terminal Constr. Co.*, 287 F.2d 382, 384 (2d Cir.), *cert. denied*, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); *Hughes–Bechtol, Inc. v. West Virginia Board of Regents*, 527 F.Supp. 1366, 1378 (S.D.Ohio 1981), *aff'd*, 737 F.2d 540 (6th Cir.), *cert. denied*, 469 U.S. 1018,

105 S.Ct. 433, 83 L.Ed.2d 359 (1984). Thus, a petition under § 4 to require arbitration of a dispute arising under a commercial contract must be brought in state court unless, for example, diverse citizenship or a maritime contract is present to justify federal jurisdiction. See C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3569, at 172 n. 12 (1984) ("The usual rules for determining federal question jurisdiction ... apply [to actions under the Federal Arbitration Act]").

The Customers then argue that federal jurisdiction obtains where § 4 is invoked to compel arbitration of a dispute over a federally created right. As the underlying dispute here involves rights asserted under the Securities Exchange Act of 1934 and could be brought by the Customers as an action in the federal court under the federal question jurisdiction, 28 U.S.C. § 1331, the Customers contend that a petition to compel arbitration under § 4 may be brought in, or removed to, federal court.

They contend this petition is supported by the provision of § 4 that "A party aggrieved by the alleged failure, neglect, of refusal or another to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for such agreement, would have jurisdiction* under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4 (emphasis added). They argue that this provision gives the Court jurisdiction in all disputes of which it would have had jurisdiction "save for" the arbitration agreement; the federal court would have jurisdiction of their '34 Act complaint save for the arbitration agreement; and accordingly it has jurisdiction of the § 4 petition.

---

**18.** In this court's view, the fact that the issue was discussed in the context of a removal action does not make the case any less relevant. A case could be removed only if it could have been filed as an original action in the federal court in the first place. The jurisdictional principles—apart from matters of procedure only—remain the same.

**19.** Given that plaintiff appears pro se, this court liberally quotes from the *Drexel Burnham* opinion, inasmuch as that court appears to have exhaustively addressed all issues and points which might have been raised by plaintiff.

The problem is, in part, one of bad statutory drafting. In addition to section 4, there are numerous provisions of the Act that refer to "the United States court," 9 U.S.C. §§ 7, 9, 10, 11, in a manner that reads like a bestowing of jurisdiction. These references have not been so construed. They have not been understood to confer jurisdiction on the federal court. For example, § 7, dealing with the problem of compelling attendance of witnesses at arbitration, provides for a petition to "the United States district court ... [to] compel the attendance of such person or persons before said arbitrator or arbitrators." 9 U.S.C. § 7. Section 9, regarding the confirmation of arbitration awards, states that, if the parties in their agreement have not specified the court to which an application to confirm the arbitration award may be made, "then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. Section 10 provides that the same "United States court" may make an order vacating the award, while section 11 permits the same "United States court" to modify or correct the award. Each of these sections seems on its face to confer jurisdiction on the United States courts. A literal reading would mean that for any arbitration to which the Act applies, petitions to compel, confirm, vacate, modify and to compel the attendance of witnesses could all be brought as original proceedings in the federal courts. In spite of the apparent meaning of these sections, courts have consistently held that they do not confer federal subject matter jurisdiction. *See C.P. Robinson Construction Co. v. National Corp for Housing Partnerships,* 375 F.Supp. 446, 448–49 (M.D.N.C. 1974) (section 3); *Instituto Cubano De Establizacion Del Azucar v. T/V Firbranch,* 130 F.Supp. 170 (S.D.N.Y.1954) (sections 5 and 7); *E.A.S.T., Inc. of Stamford, Conn. v. M/V Alaia,* 673 F.Supp. 796 (E.D.La. 1987); *Metropolitan World Tanker Corp. v. P.N. Pertambangan Minjakdangas Bumi Nasional,* 427 F.Supp. 2, 3–4 (S.D.N.Y.1975) (section 8); *Ballentine Books, Inc. v. Capital Distributing Co.,* 302 F.2d 17 (2d Cir.1962) (section 9); *Paley Associates, Inc. v. Universal Woolens, Inc.,* 446 F.Supp. 212 (S.D.N.Y.1978) (section 10).

Had these seeming grants of jurisdiction been construed to perform that role, they would have represented a potentially drastic change in the scope of federal court activity. Every dispute arising from an employment contract or a commercial contract "involving commerce" containing an arbitration clause could give rise to a federal court action for the confirmation, vacation or modification of an arbitration award. It would be surprising if Congress had intended so drastic a change of federal jurisdiction.

The federal statute was modelled on the New York State arbitration act. *See Southland Corp. v. Keating,* 465 U.S. 1, 25 n. 8, 104 S.Ct. 852, 866 n. 8, 79 L.Ed.2d 1 (1985) (O'Connor, J., dissenting). That statute provided for petitions brought in the "supreme court" (of New York). It would appear that the draftsman of the federal statute, recognizing the need to alter those references to the "supreme court," substituted references to the United States district court on the theory that a reference to the federal court in a federal statute is analogous to a reference to the state court in a statute of a state. *See Sales and Contracts to Sell in Interstate and Foreign Commerce, and Federal Commercial Arbitration, Hearing on S. 4213 and S. 4214 before a Subcommittee of the Senate Committee on the Judiciary,* 67th Cong., 4th Sess. 2 (1923) (statement of Mr. Charles C. Bernheimer) ("This bill follows the lines of the New York arbitration law, applying it to the fields wherein there is Federal jurisdiction."). That semblance of logic overlooked the fact that while the New York State legislature was prescribing for a unitary state court system, the federal statute was imposing law on the states and state courts as well as on the federal court system. *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Accordingly, courts have not construed these references to the United States district court as intending to confer federal court jurisdiction, but rather as specifying

the powers possessed by the court in a case that is properly before it. The question then arises whether the reference to the federal court in § 4 should be read literally, or in a manner consistent with the references to the federal courts in other sections of the Act.

Several reasons argue against the reading urged by the Customers. First, and most important, it is contrary to the holdings of the Supreme Court. In *Moses H. Cone* and in *Southland, supra,* the Supreme Court stated that the Federal Arbitration Act neither confers federal court jurisdiction nor establishes the kind of federal right that entails federal jurisdiction under 28 U.S.C. § 1331. *Southland Corp. v. Keating,* 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983); *see Metro Industrial Painting Corp. v. Terminal Constr. Co.,* 287 F.2d 382, 284 (2d Cir.1961); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 408 (2d Cir.1959), *cert. dism.,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); *Krauss Bros. Lumber Co. v. Louis Bossert & Sons Inc.,* 62 F.2d 1004 (2d Cir.1933).

Second, it is more likely, considering the Act in totality, that this language, like the other references to the federal courts, was intended otherwise. The words stressed by the Customers, referring to the court "which, save for such agreement, would have jurisdiction," in all likelihood responded to an antiquated and arcane principal of the common law. At the time the Act was passed, a claim for specific performance of an agreement to arbitrate would not be enforced by the federal courts because such a clause was construed as an agreement to "oust" the court of jurisdiction. *See Kulukundis Shipping Co. v. Amtorg Trading Corp.,* 126 F.2d 978, 985 (2d Cir. 1942). The Senate Report on the Act explained its purpose as to overturn the "very old law ... that if an action at law were brought on the contract containing the agreement to arbitrate, such agreement could not be pleaded in bar of the action." S.Rep. No. 536, 68th Cong., 1st Sess. 2

(1924). The Act addressed the inequity that was perceived to exist where only one party to an arbitration agreement was a citizen of a state where such agreements were enforceable; the other party to the agreement of his option could either hold the first to arbitration by bringing suit in state court or defeat the agreement, at any time, by commencing suit under diversity jurisdiction in federal court. *See* Arbitration of Interstate Commercial Disputes, Joint Hearings S. 1005 on H.R. 646 and before the Subcommittees of the Committees on the Judiciary, 68th Cong., 1st Sess. 16, 35 (1924) (Statements of Julius Henry Cohen and W.W. Nichols). Thus, it has been held under § 4 that when federal jurisdiction is otherwise present by reason of diversity or admiralty, the fact that the plaintiff is seeking affirmative relief under an agreement to arbitrate does not divest the court of jurisdiction. *See The Anaconda v. American Sugar Refining Co.,* 322 U.S. 42, 44–45, 64 S.Ct. 863, 865, 88 L.Ed. 1117 (1944). The likely intended meaning of the "save for" clause is that the court which is otherwise vested of jurisdiction of the suit would not be divested by the arbitration agreement and may proceed to order arbitration, contrary to prior precedent.

Third, it is difficult to find a rational relationship between the different sections of the Act referring to the powers of the federal court if the "save for" clause is given the significance that the Customers argue for. If the references to the United States court are understood as jurisdictional, we would find incomprehensible differences between the scope of jurisdiction for different purposes. Section 7 authorizing the "United States court" to compel the attendance of witnesses would apply in every case covered by the act—i.e., every case of a contract "involving commerce." Petitions to compel under § 4, on the other hand, could be brought only in a far narrower category of cases—those in which the federal court had an independent basis of jurisdiction of the underlying dispute. There is no policy reason that could explain this bizarre difference.

If, on the other hand, only § 4 (with its unique "save for" clause) were read as conferring jurisdiction, this would produce an equally incomprehensible distinction. It would be bizarre if a petition to compel arbitration could be brought in federal court while a petition to confirm or vacate the arbitration award in the same underlying dispute could not. The interest of the federal court in determining whether the arbitration award was entered in "manifest disregard" of the federal law, *see, e.g., Office of Supply, Government of Republic of Korea v. New York Navigation Co.,* 469 F.2d 377, 380 (2d Cir.1972), would seem to be far greater than the federal interest in seeing that the claims be arbitrated. In petitions to compel arbitration, the only issue is generally whether the parties have entered into a binding agreement to arbitrate that covers the dispute. The interpretation of the federal right at stake is generally not implicated in the dispute before the court until the time of arguments to confirm or vacate the award. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–404, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967); *Conticommodity Services, Inc. v. Phillip & Lion,* 613 F.2d 1222, 1225 (2d Cir.1980).

Finally, if this Act is construed to provide for a federal forum whenever the underlying dispute involves a federal question, it must be seen as overturning the well-established rule that under § 1331 federal question jurisdiction must be determined based on the face of a "well-pleaded complaint." *See Gully v. First National Bank in Meridian,* 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936); *Four Keys Leasing & Maintenance Corp. v. Simithis,* 849 F.2d 770, 773 (2d Cir.1988); *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986). "Congress has given the lower federal courts jurisdiction to hear, ... by removal from state court [on federal question grounds], only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial ques-

tion of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2855–56, 77 L.Ed.2d 420 (1983).

Under the well-pleaded complaint rule, a suit does not come within the federal question jurisdiction unless a proper statement of the relief sought would necessarily include reference to federally created rights. Because the Supreme Court has found that the right to compel arbitration under this Act is not one of the federally created rights that gives rise to federal question jurisdiction, the necessary reference to the Arbitration Act does not bring the suit into federal court. The nature of the underlying dispute, (here a claim of fraud in violation of § 10b of the 1934 Exchange Act), is not part of a well-pleaded complaint asking the court to order arbitration, or, as in this case, asking the court to order that the arbitrations be conducted severally, rather than jointly. Questions of the policies of the '34 Exchange Act will not enter the dispute unless as part of the Respondent–Customers' answer to the petition. *See Prima Paint v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–404, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967); *Conticommodity Services, Inc. v. Phillip & Lion,* 613 F.2d 1222 (2d Cir.1980). It is well settled that issues of federal law that are injected into a suit by the answer rather than the complaint do not satisfy the requirements of federal question jurisdiction. *See Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

It is unlikely that Congress intended to repeal the well-pleaded complaint rule in the Arbitration Act. The primary purpose of the Arbitration Act was to " 'revers[e] the centuries of judicial hostility to arbitration agreements, by plac[ing] arbitration agreements upon the same footing as other contracts.' " *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (quoting *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974)). It made available a court procedure—an action to compel and later to confirm or vacate arbitration

agreements—that the courts had previously held they had no authority to entertain. By contrast, when Congress intended to expand federal jurisdiction to give the United States district courts authority to hear specified arbitration cases, in the case of arbitrations under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*, it did so expressly. *See* 9 U.S.C. § 203 (giving the federal district courts jurisdiction over an action or proceeding falling under the Convention); 9 U.S.C. § 205 (cases within Convention may be removed from state court despite the well-pleaded complaint rule).

I conclude that § 4's reference to the federal courts means only that a petition under the Arbitration Act may be brought in federal court whenever status factors authorizing the bringing of the underlying dispute in federal court similarly affect the petition. Thus, when a dispute is between citizens of different states and the amount in controversy exceeds $10,000,[20] the petition to compel arbitration will fall within federal jurisdiction; when the arbitration clause sued on is part of a maritime contract, the admiralty jurisdiction will apply to the arbitration petition as well as to the underlying suit; and a petition in a labor arbitration proceeding under the Labor Management Relations Act, 29 U.S.C. § 185(a), will likewise be in federal court by virtue of the provisions of § 301. *See Communications Workers of America v. Pacific Tel. & Tel. Co.*, 462 F.Supp. 736 (C.D.Cal.1978); *Celmer v. Luden's, Inc.*, 427 F.Supp. 991 (E.D.Pa.1977); *Minkoff v. Scranton Frocks, Inc.*, 172 F.Supp. 870 (S.D.N.Y.1959); *Ingraham Co. v. Local 260*, 171 F.Supp. 103 (D.Conn.1959). In all such cases, the petition to compel arbitration is in federal court on its own terms by virtue of a federal statute conferring federal jurisdiction on such disputes. The same is not true of a petition where the claim of federal jurisdiction is not based on the petition itself, but rather on the federal character of the underlying dispute. (Footnotes omitted).

The holding in *Valenzuela Bock* was followed two years later in the case styled *Klein v. Drexel Burnham Lambert, Inc.*, 737 F.Supp. 319 (E.D.Pa.1990). That case, like *Valenzuela Bock*, involved underlying disputes touching upon the federal securities laws [21] and an attempt by plaintiffs to consolidate arbitration claims. Where *Valenzuela Bock* was decided in the context of a removed case, however, the plaintiffs in *Klein* instituted suit in the federal district court, basing subject matter jurisdiction on a federal question—*i.e.*, 15 U.S.C. § 78aa, Rule 10b–5, and the RICO statutes. 18 U.S.C. §§ 1961–1964. And, in *Klein*, as in *Valenzuela Bock*, the district court concluded that—notwithstanding the fact that plaintiffs alleged that the underlying disputes could have been brought directly in the federal courts under the federal question jurisdiction of the court—that court lacked subject matter, observing, *inter alia (Id.* at 324)—

Here, plaintiffs' cause of action arises under the FAA, and the FAA does not create federal jurisdiction. Plaintiffs do not ask the Court to decide or address underlying federal laws apart from the FAA. Plaintiffs' action, requesting the Court to impute a contract term to the parties' arbitration agreement, does not raise a separate "federal question". *Furthermore, the jurisdictional grant relevant to plaintiffs' underlying claims is not sufficiently broad to provide an independent basis of federal jurisdiction.* (Emphasis added; footnote omitted).

This case is clearly controlled by the holdings in *Valenzuela Bock* and *Klein, supra.* Here, as in those cases, plaintiff, in her original complaint, as well as her amended complaint, "do[es] not ask the Court to decide or address underlying federal laws apart from the FAA." Her sole claim, in the original complaint, as well as her amended complaint, seeks, in terms of relief, vacation of the original [non]award, and further hearings before the arbitration panel. This court accordingly concludes that plaintiff has failed to establish the

---

**20.** Now, of course, $50,000.

**21.** As well as RICO.

subject matter jurisdiction of this court, and accordingly recommends [22] that the district judge allow the motion to dismiss [23] for want of subject matter jurisdiction.[24]

## ORDER

Pursuant to Rules 7.1(d) and (e) of the Local Rules of this Court [effective September 1, 1990], and upon review of the relevant pleadings, Plaintiff's Motion To Amend Complaint (# 19) is allowed in part and denied in part.

It is allowed insofar as the complaint is amended *vis a vis* the original defendant,

22. The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this rule shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete*, 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); see also, *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

23. Dismissal for want of subject matter jurisdiction, of course, is without prejudice on the merits. And plaintiff is not left without a remedy, since the state courts have concurrent jurisdiction to enforce the provisions of the Federal Arbitration Act, including the authority to vacate awards of arbiters. *See United Nuclear Corp. v. General Atomic Co.*, 98 N.M. 633, 651 P.2d 1277 (1982). *See also, Moses H. Cone Hospital, supra*, 460 U.S. at 26 n. 34, 103 S.Ct. at 942 n. 34 (State courts have jurisdiction to enforce the "stay" provisions of Section 3 of the FAA); *Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 67 Cal.App.3d 19, 24–25, 136 Cal.Rptr. 378, 380–81 (1977) (State court has authority under Section 4 of the FAA).

24. Defendant has also moved to dismiss for failure to state a claim upon which relief may be granted.

Inasmuch as this court concludes that this court lacks subject matter jurisdiction over plaintiff's claim, that is a matter best resolved in the state courts, should plaintiff choose to pursue her claim in that court. *See* footnote 23, *supra*.

Suffice to say at this time that it appears that plaintiff does not state a claim for relief under Section 10 of the FAA. Section 10 of the FAA allows a court to vacate an award only where the challenger proves "evident partiality," corruption, "misconduct in refusing to hear evidence," or "misbehavior by which the rights of the parties have been prejudiced."

The only grounds plaintiff states for the vacation of her award are the following: 1) she suggests the panel did not have copies of the three letters she had written to defendant, outlining her grievances in detail, but rather a letter to Edward Morris, Dir. of NYSE Arbitration which only briefly outlined her main points; 2) plaintiff "did not know she had to present an oral presentation of all her written argument[s]"; 3) she did not receive guidance or instruction from the panel, "even when it was obvious to the [p]anel she was having difficulty in comprehending her responsibility as the [p]laintiff"; 4) "[t]here did not appear to be any attempt by the [p]anel to get to the issues and a fair judg[ ]ment on the merits of the [c]laim"; 5) "[p]laintiff's perception of an "informal" hearing was faulty, extremely so, and was not given an adequate advance understanding by NYSE"; 6) she never received defendant's answer to her claim. (Amended complaint, P. 2–3).

Most of these claims are clearly conclusory in nature—the only basis apparently being that the arbitration panel found in favor of defendant and against plaintiff. There is nothing in the record, apart from mere surmise—even assuming all that she says *factually* in her complaint and amended complaint is true—which suggests that the arbitration panel did not review all of her written submissions, or that the hearing was "faulty", or that the arbitration panel did not attempt to resolve the issues and render a fair judgment on the claim. The decision of the arbiters [submitted by defendant at the request of this court] *does* indicate that plaintiff did not receive a copy of defendant's answer to the charge in the arbitration proceedings. But that was because defendant never filed an answer [for which defendant was assessed costs by the arbitration panel]. This is *not* a case where an answer was filed and plaintiff could suggest that she was prejudiced by reason of the fact that she had not reviewed the answer prior to the hearing. In truth and fact, nothing was filed, and there was nothing to review. Finally, no authority suggests that the arbitration panel should have assisted plaintiff in the presentation of her claim. To the contrary, if the arbitration panel assisted plaintiff, then that panel could not be said to have been impartial as required by Section 10.

Shearson Lehman/E.F. Hutton.[1]

Insofar as defendant seeks to add additional parties, to wit: William M. Swain and New York Stock Exchange, the motion is denied on the grounds that the added claims against the added parties would be patently frivolous. Insofar as plaintiff seeks to add Swain as a party defendant,[2] this court lacks subject matter jurisdiction for the reasons more fully set forth in the Report and Recommendation on Motion to Dismiss entered contemporaneously herewith.[3] Insofar as plaintiff seeks to add the New York Stock Exchange as a party defendant, not only does this court lack subject matter jurisdiction for the reasons more fully set forth in the Report and Recommendation on Motion to Dismiss entered contemporaneously herewith, but the amended complaint says nothing whatsoever about that defendant. That defendant is simply named; the amended complaint, however, does not allege any conduct—or lack of conduct for that matter—on the part of the New York Stock Exchange.

The motion is allowed,[4] accordingly, only insofar as the amended complaint refers to defendant Shearson Lehman/E.F. Hutton.

1. As amended, however, this court has recommended that the amended complaint be dismissed for the reasons more fully set forth in the Report and Recommendation on Motion to Dismiss entered contemporaneously herewith.

2. According to the allegations of the amended complaint, Swain is the broker with whom plaintiff opened the account at Shearson Lehman/E.F. Hutton.

3. Insofar as plaintiff would predicate subject matter jurisdiction on diversity, not only has she failed to establish the requisite amount in controversy, but even the element of diversity, since the amended complaint indicates that both plaintiff and Swain are citizens of Massachusetts.

4. The parties are hereby advised that under the provisions of Rule 2(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party may move for reconsideration by a district judge of the determination(s) and order(s) set forth herein within ten (10) days after receipt of a copy of this order, unless a different time is prescribed by this court or the district judge. The party seeking reconsideration shall file with the Clerk of this Court, and serve upon all parties, a written notice of the motion which shall specifically designate the order or part thereof to be reconsidered and the basis for the objection thereto. The district judge, upon timely motion, shall reconsider the magistrate's order and set aside any portion thereof found to be clearly erroneous in fact or contrary to law. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. See *Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); see also, *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).